UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN J. CONN and HEATHER
MILLER,                                        Case No. 2:08-cv-13073

       Plaintiffs,                          HONORABLE STEPHEN J. MURPHY, III

v.

BOARD OF EDUCATION of THE CITY OF
DETROIT, *et al.*,

       Defendants.
_____/

## <u>ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION</u>

The plaintiffs, tenured teachers in the Detroit Public Schools, seek a preliminary injunction restoring them to their teaching positions, asserting that their termination was in retaliation for their exercise of their First Amendment rights of freedom and assembly. For the reasons stated below, the preliminary injunction will be granted.

## <u>INTRODUCTION</u>

The plaintiffs filed this case on July 16, 2008. They moved for a preliminary injunction on August 6, 2008. On August 7, 2008, the defendants answered the complaint and on August 26, 2008, they filed a lengthy response to the permanent injunction motion. The case was transferred to the undersigned judicial officer on September 5, 2008. On September 9, 2008, the plaintiffs filed a reply brief. The Court on October 24, 2008 gave notice that a hearing would be held on November 5, 2008 on the motion for an injunction. The Court convened a hearing at 2:00 p.m. on that date, but neither any of the defendants nor their counsel appeared before the Court at that time. The Court entered a memo order

inviting any party to supplement the papers on file in the case and hours before the filing of this order, new counsel entered an appearance for the defendants and reiterated arguments that had previously been made by the defendants.

FACTS

The facts -- the vast majority of which are undisputed -- are drawn from the Complaint and from the Exhibits to the parties' briefs. Notably, one of those exhibits evidences that the plaintiffs filed on August 30, 2007, a "Charge" with the Michigan Employment Relations Commission asking for relief from the state administrative body which hears employment grievances from Michigan public employees. The Charge resulted in the issuance of an extremely detailed Opinion and Recommended Order by an Administrative Law Judge that was dated June 12, 2008.

Plaintiffs Stephen J. Conn and Heather Miller are tenured teachers in the Detroit Public Schools. Compl. ¶¶ 1, 4, 5. In 2007, Conn and Miller were vocal opponents of the plan of the Board of Education of the City of Detroit (the "Board") to close 38 schools due to budget difficulties. Compl. ¶ 13.

On May 1, 2007, there were a march and rally in opposition to the closing plan. Compl. ¶ 15-18. The march was organized by a group called BAMN ("Coalition to Defend Affirmative Action, Integration, and Immigrant Rights and Fight for Equality By Any Means Necessary"), of which group Conn and Miller were members. *Id.* Conn and Miller attended the march, having first received advance permission to be off of work for the demonstration. Compl. Ex. 9 (Decision and Recommended Order of Administrative Law Judge, hereinafter "'Decision and Recommended Order") at p. 6. The march was also attended by some students at Malcolm X Academy Middle School, at least some of whom provided the school

with parental permission slips to attend the march. *Id.* Conn sought but was denied permission to serve in a formal role as a chaperone. *Id.* Police officers employed by the Detroit Public Schools were aware of the planned demonstration in advance and were deployed along with video tape technicians along the planned route of the march. *Id.* The march began at Malcolm X Middle School, proceeded to Cass Tech High School, and was to finish at Northern High School, all in Detroit. *Id.*

When the marchers reached Northern High School, the parties agree that the march and rally appeared to descend into chaos. Some students attempted to bang on the doors and windows of the high school, unsuccessfully exhorting Northern students to walk out of the school. *Id.* at 7. The Detroit Public School police moved in and shooed the children away from the building. *Id.* at 8. At some point, pepper spray, or some other irritating aerosol, was used at or near a group of children. *Id.*

Conn and Miller were each arrested at Northern High School by police officers employed by the Board and charged with disorderly conduct and violation of a school ordinance. Compl. ¶ 21. They were released without charges, but were subsequently told that charges were reinstated. Pl. Mot. for Prelim. Inj. Exh. 2, Conn Decl. at ¶ 14. The plaintiffs returned to their respective schools and continued teaching through the end of the school year. Compl. ¶ 21. They continued to actively oppose the school closings during the remainder of the school year. Compl. ¶¶ 23-24.

On June 29, 2007, Lamont Satchel, the acting superintendent of the Detroit School District, placed both Conn and Miller on temporary unpaid administrative leave due to conduct at or in connection with the May 1, 2007 rally. Compl. ¶¶ 25, 29 and Exh. 1. Shortly before August 27, 2007, the date that teachers in the Detroit Public Schools were

required to report for a new school year, the Board advised Conn and Miller that they would remain on administrative leave for an indefinite period. Compl. ¶ 27-28.

On August 30, 2007, the plaintiffs filed charges with the Michigan Employment Relations Commission (MERC) alleging that the Board and its agents had violated the Public Employment Relations Act ("PERA"), MCL 423.201 et seq., by placing them on administrative leave. Compl. ¶ 30 and Exh. 2. As a result of settlement discussions before a MERC Administrative Law Judge, the Board restored the plaintiffs to paid status in October 2007, and their salaries have continued to be paid until the present time. Compl. ¶ 31.

On October 12, 2007, the Board filed disciplinary charges against each of the plaintiffs based upon the events of May 1, 2007. Compl. ¶ 32 and Ex. 3. The Board charged the plaintiffs with placing the students at an unreasonable risk of harm to their health and welfare and unprofessional conduct unprofessional conduct in connection with the events at the protests. *Id.* Shortly thereafter, the plaintiffs filed an amended charge with MERC, alleging additional employment violations. Compl. ¶ 33 and Ex. 4. From October 4, 2007 through December 12, 2007, the MERC Administrative Law Judge conducted 12 days of hearings on the charges, at which the Board and the plaintiffs were each represented by counsel and had full opportunity to call and to cross-examine witnesses. Compl. ¶ 34, Answer ¶ 34.

On May 5, 2008, the Board filed amended charges against Conn and Miller, which once again related to the events of May 1, 2007, and that advised Conn and Miller the Board was recommending their dismissal. Pls. Mot. for Prelim. Inj., Ex. 7. Plaintiffs filed an amended charge at MERC the same day regarding the restated employment charges

4

brought by the Board. Compl. ¶ 36 and Ex. 6. They also applied to the Wayne County Circuit Court for a temporary restraining order preventing the Board from acting on the proposed discharge until its regular meeting of June 12, 2008. Compl. ¶ 37. The state trial court granted the temporary restraining order, Compl. Ex. 7, and on June 6, 2008, the Board notified Conn and Miller that it would act on the same charges set forth in its May 1, 2008, letter at its next meeting. Pls. Mot. for Inj., Ex. 8.

<u>Decision and Recommended Order dated June 12, 2008</u>

On June 12, 2008, the MERC Administrative Law Judge issued a Decision and Recommended Order, finding, among other things, that the Board engaged in unlawful and intentionally retaliatory adverse employment actions against both Conn and Miller based on their engaging in lawful union activity. Compl. ¶ 39 and Decision and Recommended Order, at 16.

The Administrative Law Judge found that Conn and Miller were well-known local activists. Decision and Recommended Order, at 4. He found that the defendants were aware of Conn and Miller's activities in opposition to certain policies of the Board. *Id.* He found that undisputed testimony showed that the Board's president, Jimmy Womack, told Board members Marie Thornton and Annie Carter that he intended to get rid of Conn and Miller over their public opposition to the planned school closures. *Id.* at 5-6.

As to the events of May 1, the Administrative Law Judge found that the Detroit Public Schools presented no evidence that the Conn and Miller were anything other than mere participants in the march. *Id.* at 7. He found that an "exhaustive courtroom review of the video images of the events of May 1st established no wrongdoing on the part of Conn or Miller." *Id.* at 15. He found that the arrests of the plaintiffs "appear to have been ordered

pursuant to a desire to facilitate their removal from the workplace, rather than by any legitimate law enforcement concern based on their individual conduct on the scene that day." *Id.* at 16.

Concerning the manner that the charges leveled by the Board against the plaintiffs were prosecuted, the Administrative Law Judge found that the Board disregarded its normal procedures in cases involving teacher discipline. He found that the normal procedure at Detroit Public Schools when teachers are facing possible discipline is to have an investigative meeting between the teachers and management, with union representation and with an opportunity for the teacher to respond to or confront witnesses against them, but that no such meeting was held in this case. Compl. Ex. 9 at 10-11. The Administrative Law Judge found the decision to place Conn and Miller on unpaid leave was unprecedented in the face of uncontradicted testimony that no other Detroit Public School tenured teacher had ever been placed on an unpaid leave of absence pending an investigation or discipline. *Id.* at 11. He also found that, although the teachers were told that they were being put on administrative leave pending further investigation, in fact no investigation was ever conducted following the May 1, 2007 demonstration. *Id.* at 11-12.

On the issue of retaliation, he found that the evidence before him "overwhelmingly establish that Conn and Miller were not removed from the workplace because of their conduct on May 1st, but rather that the events of May 1st were seized upon as an opportunity to be rid of disfavored workplace activists, or as put in the uncontested words of Board President Womack, to 'starve them out.'" *Id.* at 21-22.

In his proposed order, given what he termed the "extraordinary record" before him, the "specious and flagrantly pretextual charges of misconduct" and the First Amendment

concerns at stake, the Administrative Law Judge recommended that the Commission grant injunctive relief to the teachers restoring them immediately to their teaching positions, and to any pay, benefits and seniority to which they would otherwise be entitled. *Id.* at 21-23.[1]

Further Proceedings

On June 19, 2008, a few days after the Administrative Law Judge issued his opinion and recommended order, the Board voted at the motion of Board President Womack to terminate Conn and Miller based upon the amended charges. Compl. ¶ 43 and Ex. 10.

The Board has filed numerous exceptions to the Administrative Law Judge's opinion and recommended order, which are currently pending before the full MERC. Defendants' Resp. to Pls. Mot. for Prelim. Inj., Ex. 2.

The plaintiffs have likewise appealed their dismissal to the Michigan Teacher Tenure Board.

Conn and Miller remain on administrative leave pending the decision of the MERC. They seek an injunction ordering the Board to place them back in their classrooms for this academic year.

ANALYSIS

Plaintiffs' complaint asserts a claim based on the First Amendment of the United States constitution, arguing that the Board's actions in first placing them on administrative leave and then firing them violate their rights of speech and assembly protected by the First

---

[1] The Court notes that the Board suggests in its briefs that the Administrative Law Judge was biased against the defendants and in favor of the plaintiffs. The Board notes that they moved in the administrative process to have the ALJ disqualified for bias against them. Aside from a statement to this effect in their brief, defendants have offered no evidence at all of bias in their submissions to this Court.

Amendment.  Although the complaint does not specifically refer to 42 U.S.C. § 1983, the plaintiffs appear to be treating this as a § 1983 action, and the Court will construe it as a claim under 42 U.S.C. § 1983 as well.

I.  Subject Matter Jurisdiction

Jurisdiction over this matter is based on 28 U.S.C. § 1343(3), which provides original jurisdiction in the district court for actions to redress the deprivation under color of state law of rights secured by the constitution or any act of Congress providing for equal rights of citizens.

The defendants assert as a threshold matter that the Court should not hear the plaintiffs' claims because the plaintiffs have failed to exhaust their state administrative remedies.  There is, however, no general requirement of exhaustion of state remedies before a plaintiff can bring a § 1983 action.  *See* Chemerinsky, *Federal Jurisdiction*, § 8.4 (2007); *Patsy v. Board of Regents*, 457 U.S. 496 (1982).

Defendants also argue that the Court should dismiss the case and deny the plaintiffs' motion for a preliminary injunction because the reinstatement of the teachers is currently being appealed or considered before the MERC, the Wayne County Circuit Court and the Michigan Teacher Tenure Board.  The defendants offer no cases in support of their theory that a federal court should dismiss a suit alleging violation of federal constitutional rights under these circumstances, and the Court has found none that stands for such a proposition. Given the unflagging obligation of federal courts to exercise jurisdiction in cases where important federal constitutional principles are at stake and no adequate state or administrative remedy exists for violations of those principles, the Court sees no reason to stay or dismiss the suit or the motion in the present matter.

8

II.  Standards for Injunctive Relief

The decision of whether to issue a preliminary injunction lies within the sound discretion of the district court. *Golden v. Kelsey-Hayes*, 73 F.3d 648, 653 (6th Cir. 1996). The Supreme Court and the Sixth Circuit have noted that "the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997). The Sixth Circuit has advised that "a preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted).

When considering whether to grant the "extraordinary" remedy of a preliminary injunction, a district court must consider and balance four factors: (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the preliminary injunction; (3) whether issuance of the preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the preliminary injunction. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007).  These four factors "are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (citation omitted). A district court must make specific findings concerning each of the four factors unless fewer are dispositive of the issue. *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995); *Jones v. City of Monroe*, 341 F.3d  474, 476 (6th Cir. 2003) (citations omitted) (court "is not required to

make specific findings concerning each of the four factors used in determining a motion for a preliminary injunction if fewer factors are dispositive of the issue").

A. Likelihood of success on the merits.

The first factor to be considered by this Court is whether Conn and Miller have demonstrated a strong likelihood of success on the merits of their § 1983 claim. For the reasons set forth below, they have.

1. Elements of a § 1983 claim for First Amendment Retaliation

Conn and Miller claim that the Board violated their constitutional rights by first suspending and then terminating them in retaliation for their public opposition to the Board's policies. To establish a claim for First Amendment retaliation, plaintiffs must show that (1) they engaged in protected conduct; (2) there was an adverse action taken against her "that would deter a person of ordinary firmness from continuing to engage in the conduct"; and (3) "there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). This Court's analysis of the element of cause "focuses on whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected activity." *Sowards v. Loudon County, Tenn.,* 203 F.3d 426, 431 (6th Cir. 2000) (citation omitted). If a plaintiff meets his or her initial burden, the burden then shifts to the government employer to show by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. *Id.* (*citing Kreuzer v. Brown*, 128 F.3d 359, 363 (6th Cir. 1997); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

a. Protected Conduct

The question of whether the activities that Conn and Miller engaged in here are protected for purposes of First Amendment analysis is one of law for the Court to decide. *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). The Court notes that the conduct at issue is Conn and Miller's speeches at school board meetings, attendance at the rally of May 1, and participation in a lawsuit against the school closings. There is no question this activity is within the bounds of protected conduct set forth in *Pickering v. Board of Education,* 391 U.S. 563 (1968) and its progeny. In *Pickering,* the Supreme Court found that a local Board of Education could not constitutionally terminate a teacher who wrote a letter to a local newspaper disagreeing with funding decisions made by the board. *Id.* at 568. The Court finds as a matter of law that activities of Conn and Miller at issue here (speaking at Board meetings, participating in rallies, and participating in a lawsuit in opposition to the Board's plans), are the types of First Amendment activities clearly encompassed by the opinion rendered by the *Pickering* court.

The Board relies on the case of *Whitsel v. Southeast Local School District*, 484 F.2d 1222 (6th Cir. 1973), in support of its argument that the dismissal of the teachers was not in violation of the First Amendment. In *Whitsel*, a school board dismissed a teacher who left his classroom to speak to students gathered in an unauthorized assembly in the gymnasium to question the dismissal of two student-teachers that had participated in the demonstrations on the Kent State campus against the extension of the Vietnam War into Cambodia. *Whitsel,* 484 F.2d at 1224-26. The school superintendent went to the gymnasium, explained the reason for the dismissal of the student-teachers, and instructed the students to return to their classes because the assembly was unauthorized. *Id.* at 1224. The students did not obey the superintendent and asked to hear from Whitsel, who

11

told them that he had given one of the student-teachers permission to leave, told them that

there were political implications in the dismissal of the two student-teachers, and said that

the student-teachers might have a case for the American Civil Liberties Union or the Ohio

Civil Right Union. *Id.* The Sixth Circuit distinguished the *Pickering* case and held that

Whitsel's comments were outside the protections of the First Amendment:

> Here, appellant's remarks were not made in his capacity as a concerned citizen but in the capacity of a school teacher during school hours on school property. Also, they were not made during an authorized assembly where the expression of ideas on issues that permitted different views was appropriate. Instead, he spoke at an unauthorized assembly of students on school property after his principal and superintendent had declared the meeting unlawful and urged the insubordinate students to abandon the proscribed gathering and return to classes. His words in this factual context impliedly countermanded the directions of his superiors and, thus construed, went beyond the mere advocacy of ideas and counselled a course of action. And the course of action impliedly counselled was diametrically opposed to the one he should have urged in obedience to the school regulation that he was required to implement and to the action called for by his superiors. Cf. *Hetrick v. Martin*, 480 F.2d 705 (6th Cir. 1973).

> We determine that the record supports the holding of the district court that, under these circumstances, Whitsel was not terminated for the advocacy of ideas but for insubordination.

*Whitsel*, 484 F.2d at 1228-29.

The Board here argues that the circumstances in this case are like those in *Whitsel*

and that the Whitsel holding requires the Court to uphold the actions of the Board in this

case. The Board's reading of *Whitsel*, however, is incorrect and its argument is

unpersuasive. The plaintiff in *Whitsel* was an on-duty teacher who left his classroom to

speak with students gathered in an unauthorized assembly in their school during school

hours. *Whitsel*, 484 F.2d at 1228-29. The superintendent of the school had already told the

students to return to their classrooms when Whitsel spoke to them, and Whitsel spoke

while on the job in direct contradiction of the direction of the superintendent. *Id.* In the case

presently before this Court, however, the actions of Conn and Miller were carried out while they were off of teaching duty, and while they were acting in their capacity as citizens, not teachers.  Decision and Recommended Order at 19 ("Both Conn and Miller were on their own time . . . .").  Therefore, even if the Court were to accept the Board's characterization of the facts here and disregard the Administrative Law Judge's finding of a pretext,[2] *Whitsel* is fully distinguishable and inapposite to the facts of this case.

Furthermore, in *Whitsel* , the Court explicitly held that, due to the procedural posture of the case, the question of whether the reason given by the Board for  Whitsel's dismissal were pretextual was not before the court.  *Whitsel*, 484 F.2d at 1229 ("We recognize that whenever a violation of First Amendment rights is alleged, the asserted reasons for dismissal must be carefully examined to see if they are mere pretexts for reasons prohibited by the Constitution.  However, by stipulating not to consider his pre-May 6 conduct, appellant effectively foreclosed such inquiry").  *Id.* In the present case, the plaintiffs argue that the defendant Board's proffered reason for terminating them was pretextual, and they offer the opinion of the Administrative Law Judge in support of that argument. The large preponderance of the evidence developed by the Administrative Law Judge in the

---

[2] The ALJ found that Board member Marie Thornton testified without contradiction that then-President Jimmy Womack had asserted, shortly before the events of May 1, 2007, and prior to any disciplinary charges being leveled against the teachers, that Conn and Miller would not be returning to school in the fall, and that he would "starve them out." Decision and Recommended Order, at 5.  Conn also testified, without contradiction, that Board members Annie Carter and Jonathan Kinloch had each separately approached Conn and warned him before May 1st that Womack had told Carter and Kinloch that he intended to get rid of Conn and Miller over their public opposition to the planned school closures. *Id.* at 6.  Miller also testified that Womack had directly threatened her job status following a joint appearance on a televised debate that occurred long before the May 1 rally.  *Id.*  The ALJ found this testimony to be direct and unrefuted evidence of the pretextual nature of the Board's asserted reasoning for the firings.  *Id.* at 15

MERC proceeding -- only some of which is summarized in footnote 2, *supra*, certainly demonstrates that the terminations were in fact a pretext for preventing further criticism from or protestations by the plaintiffs.

  b. <u>Adverse Consequences</u>

  The second element the plaintiffs must establish in a claim for First Amendment retaliation is that the defendants took action against them "that would deter a person of ordinary firmness from continuing to engage in the conduct." *Thaddeus-X*, 175 F.3d at 394. This element has also been clearly established on the facts presented to the Court. Conn and Miller were first suspended from their jobs by the Board for a number of months without pay, and then terminated. It is well established that suspension and discharge from employment constitute sufficient adverse consequences for purposes of a First Amendment claim of retaliation and there are no grounds on which to find otherwise here. *See Pickering*, 391 U.S. at 574-75.

  c. <u>Causal Connection</u>

  Finally, and most significantly at this stage of the proceeding, to establish a likelihood of success on the merits for a claim of retaliation, Conn and Miller must show a "causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394. The plaintiffs' burden here is to show that their suspension and discharge were motivated in substantial part by the fact that they engaged in constitutionally protected activity. *Sowards*, 203 F.3d at 431.

  The issue the Court must resolve is quite simply how the plaintiffs must meet their burden of showing the causal connection for purposes of this preliminary injunction motion.

14

The plaintiffs argue that the Court can find as a matter of law that the third prong of the test is met because the MERC Administrative Law Judge found as fact that the Board disciplined and attempted to discharge Conn and Miller in retaliation for their opposition to its plan to close the schools, and that his findings in the MERC proceeding are entitled to preclusive effect in this action. Plaintiffs' Brief in Support of their Mot. for Prelim. Inj., at 13. The defendants assert that the findings of the MERC Administrative Law Judge are not entitled to preclusive effect because they have objected to his findings and that, therefore, those findings do not constitute the "final judgment" of the MERC.

### d. Collateral Estoppel

The United States Supreme Court has held that, in claims arising under 42 U.S.C. § 1983, a federal court must give the same preclusive effect to state administrative findings that the courts of that state would grant to such findings. *University of Tennessee v. Elliott*, 478 U.S. 788, 798 (1986); *see Travers v. Jones*, 323 F.3d 1294, 1296-97 (11th Cir. 2003) (applying *University of Tennessee v. Elliott* in a First Amendment retaliation claim to preclude plaintiff from contesting factual findings of administrative agency that plaintiff was disciplined for insubordination). Thus, under *Elliott*, this Court must determine what preclusive effect a Michigan court would give to the Administrative Law Judge's Decision and Recommended Order in the MERC proceeding.

In Michigan, collateral estoppel applies when questions of fact essential to an earlier judgment have been actually litigated and determined by a valid and final judgment between the same parties or those in privity with parties. *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3 (1988). The parties must have had a full opportunity to litigate the issues and there must be "mutuality of estoppel." *Id.* Where, as here, a party seeks to preclude

relitigation on the basis of an administrative decision, the Michigan courts also require that the party show that the administrative decision was adjudicatory in nature, provides a right of appeal, and the Legislature must have intended to make the decision final absent an appeal. *Nummer v. Treasury Dept.*, 448 Mich. 534, 542 (1995).

The Michigan Supreme Court held in *Nummer* that a final decision of the MERC would be entitled to preclusive effect in the courts of the state. Accordingly, pursuant to the law of *University of Tennessee v. Elliott*, a final MERC ruling would also be given preclusive effect by this Court. If the decision of the Administrative Law Judge here had already been adopted by the MERC, as was the case in *Nummer*, or if the defendants had not filed timely objections, it is clear that the decision would be preclusive in this Court on the issue of retaliation.

The question here is a closer one than that in *Nummer*, however, because the decision of the Administrative Law Judge has not yet been adopted by the MERC. The defendants in this case argue that the Administrative Law Judge's opinion is not entitled to preclusive effect here due to the authority of the Michigan Supreme Court in *Senior Accountants, Analysts & Appraisers Ass'n v. Detroit*, 399 Mich. 449 (1976). In *Senior Accountants*, the Michigan Supreme Court found that the decisions of administrative agencies are final for purposes of collateral estoppel "absent an appeal." *Senior Accountants*, 399 Mich. at 458. The defendants argue that because in this case the defendant Board and its members have appealed the Administrative Law Judge's opinion and order to the full MERC, the Michigan Supreme Court's statement in *Senior Accountants* would provide authority for *not* giving preclusive effect to the Administrative Law Judge's findings.

Defendants, however, make far too much of this rather minor distinction. The issue of what effect a court should give an Administrative Law Judge's opinion on appeal to the MERC was not before the Michigan Supreme Court in *Senior Accountants*. The plaintiff there had not appealed the Administrative Law Judge's opinion and recommended order within 30 days required by law, *Senior Accountants*, 399 Mich. at 457, and therefore, the Administrative Law Judge's opinion and order became the final judgment of the MERC by operation of statute. *See* M.C.L.A. § 423.216 (b). Thus, the court in *Senior Accountants* did not address the issue facing this Court -- specifically of what preclusive effect a Michigan court would give an opinion of a MERC Administrative Law Judge pending appeal.

In support of the argument that the Administrative Law Judge's decision should be given preclusive effect, the plaintiffs point to the Michigan Court of Appeals decision in *City of Troy v. Hershberger*, 27 Mich. App. 123 (1970), in which the Court of Appeals ruled as Michigan law that a judgment pending appeal is deemed to be *res judicata*. The plaintiffs also point to the holding of the Michigan Court of Appeals in *Temple v. Kellel Distrib. Co.,* 183 Mich. App. 326 (1990), in which the Court of Appeals extended the holding in *City of Troy* to find that a determination by the Michigan Bureau of Worker's Disability Compensation was entitled to collateral estoppel effect in a later action even though the Bureau's decision had been appealed. *Temple*, 183 Mich. App. at 328.

Again, neither *City of Troy* nor *Temple* is precisely on point or authoritative in this case, but the Court finds both instructive and persuasive. *City of Troy* dealt with the preclusive effect of a trial court judgment while that judgment was pending appeal; it did address the issue of what effect should be given to an appeal of a hearing officer to the

17

agency.  *Temple*, on the other hand, analyzed the Workers' Disability Compensation Act, rather than the Michigan Public Employees Relations Act that is at issue in the present matter before the Court.  In fact, the Court has been unable to find *any* case directly addressing the issue of whether and to what extent factual findings by a MERC Administrative Law Judge are entitled to collateral estoppel effect in a state or federal court action while those findings are being appealed to the MERC.

For purposes of deciding the instant preliminary injunction motion, however, the Court need not reach the precise issue. Instead, the Court must, under the traditional four prong standard for deciding upon injunctive relief stated above, determine whether the plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims, and *not* whether the plaintiffs have proven each and every element on every claim of the entire case.

The Court therefore concludes that it is entirely appropriate and in fact mandated under relevant First Amendment analysis that the Court look to the Administrative Law Judge's opinion and recommended order in the state MERC proceeding as reliable and persuasive evidence that the plaintiffs were suspended in retaliation for protected conduct. Michigan law requires that both the MERC and any court reviewing a final decision of the MERC give deference to the factual findings of an Administrative Law Judge that conducts a MERC hearing, and the Court, for purposes of this preliminary injunction motion, will give deference to those findings as well.

PERA does not set out standards for the MERC to use in reviewing an opinion and recommended order of an Administrative Law Judge.  *See* M.C.L.A. § 423.216 (b).  It is clear, however, that the MERC is not free to disregard the findings of a hearing referee,

18

particularly in cases involving factual determinations and evaluations of credibility. Instead, Michigan courts look to the factual findings of an Administrative Law Judge as part of the overall record in determining whether a final MERC decision is supported by substantial evidence. *Michigan Employment Relations Comm'n v. Detroit Symphony Orchestra, Inc.,* 393 Mich. 116, 124-27 (1974). Michigan courts have reversed MERC factual findings that ignore or fail to give proper weight to the findings of the trial examiner. *See Michigan Employment Relations Comm'n*, 393 Mich. at 126-27 (reversing MERC finding of anti-union animus in part because of disregard for Administrative Law Judge's factual findings); *Warren Education Ass'n v. Warren Consolidated Schools*, 2007 WL 1094797 (Mich. App. April 12, 2007) (reversing MERC order dismissing unfair labor practice charge and holding MERC impermissibly ignored and failed to defer to Administrative Law Judge's assessment of witness credibility, therefore incorrectly rejecting Administrative Law Judge's finding of anti-union animus).

In the case before this Court, the Administrative Law Judge conducted 12 days of hearings on Conn and Miller's unfair employment practice claim. All parties were represented by counsel. Those hearings dealt specifically with the activities of the teachers prior to the May 1 demonstration, the teachers' relationship with members of the Board, the facts surrounding the May 1 march, the charges issued against Conn and Miller, any investigations done by the School Board, and the conduct of the members of the school board and the Detroit Public Schools police department. A transcript of more than 2,000 pages was created and sixty-seven trial exhibits were admitted, including CDs containing partial video and audio recordings created by the Detroit Public Schools police department of the events of May 1. The Administrative Law Judge's opinion shows that he received

into evidence and considered the testimony of Conn, Miller, several Detroit Public Schools police officers, Detroit School Board member Marie Thornton, former Interim Superintendent Satchel, Detroit Public Schools superintendent Connie Calloway, Detroit Federation of Teachers President Cantrell, and Cass Tech principal Ashford. All in all, the Administrative Law Judge developed an extremely detailed factual record.

Moreover, the Administrative Law Judge wrote a highly detailed 24 page Decision and Recommended Order, in which he addressed specifically the witnesses that testified and judged their credibility. His conclusions were amply supported by the evidentiary record that had been developed. The Administrative Law Judge found the testimony of Conn and Miller that they had not committed misconduct at the May 1 rally to be credible and fully supported by the video and audio evidence. He also found the testimony of the Detroit Public Schools police officers to be lacking in credibility and contradicted by the video and audio evidence. He specifically found on the evidence before him that the plaintiffs had been suspended and threatened with firing in retaliation for speaking out in opposition to the policies of their employer, the Detroit Public Schools.

Overall, given these findings by the Administrative Law Judge, and the deference shown by Michigan Courts to an Administrative Law Judge's findings of fact in reviewing final orders of the MERC, the Court finds that Conn and Miller have quite clearly met their burden of showing a substantial likelihood of success on the merits of their First Amendment retaliation claim.

B. Irreparable Injury to the Moving Parties

The second factor that the Court must consider in deciding whether to issue a preliminary injunction is whether the plaintiffs have shown that they would suffer irreparable

injury without the preliminary injunction being entered. The defendants argue that the plaintiffs cannot show irreparable harm because their salaries and benefits continue to be paid, despite their termination, and that their pay status and benefits will remain the same until their administrative rights have been fully exhausted. (Defendants' Brief in Support of Response in Opposition to Plaintiffs' Motion For a Preliminary Injunction at 12-13). While this might be true in an ordinary case of discharge, in the context of a claim alleging retaliatory discharge for exercise of First Amendment rights, the Sixth Circuit has found that "an individual, who has been subjected to direct and intentional retaliation for having exercised the protected constitutional right of expression, continues to suffer irreparable injury even after termination of some tangible benefit such as employment." *Newsome v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) (citations omitted). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (citations omitted). Therefore, the Court finds that the plaintiffs have persuasively demonstrated that they will suffer irreparable injury if an injunction does not issue.

C. Irreparable Injury to Others

The third factor the Court must consider is whether issuance of the injunction would cause irreparable injury to others. The Board does not argue that the defendants themselves will suffer any irreparable harm should the Court grant the requested injunction. Instead, they essentially argue that the public interest will be harmed by issuance of the injunction. The Court finds in this case, therefore, that the factor of irreparable injury to others merges with the factor of the public interest regarding the issuance of a preliminary injunction, and the Court addresses both prongs immediately below.

D. Public Interest in Issuance of the Preliminary Injunction

The final factor that the Court must consider is whether granting the preliminary injunction in this case would serve the public interest. The two sides offer dramatically different views of this point.

The Board argues that the public interest would suffer if the teachers were reinstated to their positions because, they argue, "teachers who are entrusted with the welfare of students pursuant to District policy could violate it with impunity." Defendants' Brief in Support of Opposition to Mot. for Prelim. Inj., at 13. Specifically, the Board argues that:

> Plaintiffs' actions include, but are not limited to, playing a significant role in a disruptive demonstration designed to interfere with the operation of two DPS schools; refusing to obey lawful orders to disperse a riotous crowd of students; and advocating to students to do likewise.

*Id.* The defendants argue that returning the plaintiffs to the classroom environment would only serve to condone the plaintiffs' misconduct. *Id.*

The plaintiffs argue, to the contrary, that the public interest will be served by the reinstatement of the teachers. They cite the Sixth Circuit Court of Appeals' decisions in *Newsome* and in *Bell* v. *Johnson*, 308 F.3d 594 (6th Cir. 2002) for the proposition that the public interest is served by remedying discrimination against persons for the exercise of their First Amendment rights, which, if not remedied, may result in the chilling of free expression.

While the Board undoubtedly has a strong interest in maintaining school discipline, the finding of the MERC Administrative Law Judge that the Board's articulated rational for firing the teachers was pretextual severely undercuts any public interest rationale for the Board's continuing separation of the two plaintiff teachers from their classrooms. Put another way, there can be no public interest concerns afforded to what a myriad of evidence developed

in a state administrative proceeding demonstrates to be highly impermissible, apparently dishonest, and constitutionally violative action to stand. The Court finds, based on the entire record before it, that the plaintiffs' actions at issue were exercised in full pursuit of their fundamental First Amendment rights of speech and freedom to assemble. The governmental desire of the defendant Board to impose order may not impermissibly infringe on the teachers' First Amendment rights. And there is no evidence at all in the record before the Court suggesting that Conn and Miller are anything other than competent teachers; indeed, there is no assertion by the defendants that they could be appropriately sanctioned for anything other than their conduct at the May 1 rally.

On the record before this Court, and in light of the activities asserted by the plaintiffs in exercising their fundamental rights of speech and assembly, the Court finds that the public interest will be served by issuing an injunction returning the teachers to their teaching positions.

## CONCLUSION

Upon careful consideration of the entire record in this case to date, and for all of the reasons stated above, the Court finds that the plaintiffs Conn and Miller have met their burden of demonstrating that they are entitled to preliminary injunctive relief, that they should be returned to the schools and to the teaching positions they held prior to their removal from the schools in June 2007, and that they are highly likely to succeed on the merits of this case. The Court will therefore fashion an appropriate order.

## **ORDER**

Wherefore, it is hereby **ORDERED** that Plaintiffs' Motion for Preliminary Injunction is **GRANTED**. The defendant Board of Education of the City of Detroit must immediately

return the plaintiffs, Stephen J. Conn and Heather Miller, to their teaching positions within

the Detroit Public Schools in a school and classroom appropriate to their seniority status.

     The Court will issue a scheduling order governing future dates in this litigation within

ten days.

                  s/Stephen J. Murphy, III
                  STEPHEN J. MURPHY, III
                  UNITED STATES DISTRICT JUDGE

Dated: November 6, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on November 6, 2008, by electronic and/or ordinary mail.

                  Alissa Greer
                  Case Manager